UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


FILED
Jan 16 2018
CLERK

| | |
|---|---|
| RICHARD HYLLAND,<br><br>Plaintiff,<br><br>vs.<br><br>RUSSELL FLAUM,<br><br>Defendant. | 4:16-CV-04060-RAL |
| VIRGINIA FLAUM,<br><br>Plaintiff,<br><br>vs.<br><br>TRACI HYLLAND, and RICHARD HYLLAND,<br><br>Defendants. | 4:16-CV-04168-RAL<br><br>OPINION AND ORDER<br>ON PENDING MOTIONS |

These two consolidated cases arise out of an alleged affair between Russell Flaum and Traci Hylland. Traci's husband Richard Hylland sued Russell for alienation of affections, which is 16-CV-4060. Thereafter, Russell's wife Virginia sued the Hyllands asserting a claim for alienation of affections against Traci and two claims for invasion of privacy against Richard, which is 16-CV-4168. The Hyllands have now moved for judgment on the pleadings, or, alternatively, summary judgment on all of Virginia's claims in 16-CV-4168. 16-CV-4168, Doc. 16. Virginia opposed the Hyllands' motion and has filed a motion under Rule 56(d) of the Federal Rules of Civil Procedure asking this Court to deny or postpone ruling on the Hyllands'

1

motion. 16-CV-4168, Doc. 25. For the reasons explained below, this Court grants the Hyllands' motion in part and grants Virginia's motion in part. The parties' motions are otherwise denied.

I. **Facts**

The Hyllands are South Dakota residents but maintain a second home in Indian Wells, California. The Flaums are Illinois residents who also maintain a second home in Indian Wells, California. Russell and Traci first met at a country club in Indian Wells in late 2014. They started playing tennis together and this progressed to other activities, including going out to eat, attending tennis tournaments, and meeting up in Palm Desert or Beverly Hills, California. Apparently at Traci's request, Russell met with Traci and her therapist in early May 2015 in Palm Desert.

Traci returned to South Dakota on May 17, 2015, but she and Russell continued to communicate through the mail, internet, and telephone. Many of these communications were romantic in nature, with Traci and Russell expressing love for one another and discussing leaving their spouses. In July 2015, after discovering these communications, Richard mailed a package of material concerning Russell's relationship with Traci to Virginia in Illinois. The package, among other things, alleged that Traci and Russell engaged in sexual intercourse in California and contained what appeared to be emails and text messages Russell sent to Traci. In September 2015, Richard sent packages containing this same content to Virginia and Russell's children and the fiancé of one of these children.

In March 2016, Richard sued Russell in South Dakota state court for alienating the affections of Traci. Russell removed the case to this Court and moved to dismiss for lack of personal jurisdiction. At the hearing on Russell's motion, Richard through counsel acknowledged that he claims that the alienation of affection tort was committed after Traci

returned to South Dakota in mid-May of 2015 and that Richard is making no claim that any of the conduct in California supports a cause of action or recovery. California law does not recognize a claim for alienation of affection. In November 2016, this Court denied Russell's motion to dismiss, finding that personal jurisdiction over Russell existed because Russell intentionally directed his conduct at South Dakota, and because the alleged effects of his conduct were suffered in South Dakota. 16-CV-4060, Doc. 21.

Virginia then filed her suit in this Court, asserting a claim for alienation of affections against Traci and two claims for invasion of privacy against Richard. 16-CV-4168, Doc. 10. According to Virginia, both her alienation of affections claim against Traci and Richard's alienation of affections claim against Russell are based on the same telephone calls, texts, and emails. Virginia's invasion of privacy claims concern the packages Richard mailed presumably from South Dakota to Illinois and the materials contained therein.

The Hyllands then moved for judgment on the pleadings or, alternatively, summary judgment. 16-CV-4168, Doc. 16. Virginia opposed the motion and also filed a motion under Rule 56(d) asking this Court to either deny or continue the Hyllands' motion for judgment on the pleadings. 16-CV-4168, Doc. 25. Virginia contended that Russell deleted all of the messages Traci sent him, and that Virginia therefore needs discovery to acquire the communications Traci sent to Russell. Thereafter, Virginia filed a motion to compel discovery, asserting that the Hyllands' responses to Virginia's interrogatories and request for production were deficient. 16-CV-4168, Doc. 34. Virginia's motion mainly concerned Traci's communications with Russell, but also sought some information about Richard's packages sent to people in Illinois. Among other things, Virginia asked the Hyllands to produce all of the electronic devices they have used since 2015 so that a forensic expert could search them for communications between Traci and

3

Russell. The Hyllands produced an additional 272 pages of documents, but Virginia remained unsatisfied with the Hyllands' discovery responses. After a hearing on the pending motions, this Court granted in part Virginia's motion to compel, ordering that Traci produce the iPhone she used to communicate with Russell so that a forensic computer firm could attempt to retrieve these communications. 16-CV-4168, Doc. 45.[1]

**II.  Standards of Review**

When ruling on a motion for judgment on the pleadings under Rule 12(c), courts must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Haney v. Portfolio Recovery Assocs., LLC, 837 F.3d 918, 924 (8th Cir. 2016) (quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). A motion for judgment on the pleadings under Rule 12(c) "should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." Porus Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). On summary judgment, the facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curium).

---

[1] Virginia has filed a second motion to compel on December 15. 16-CV-4168, Doc. 46. According to the motion, Traci's attorney claims that Traci no longer possesses any of the devices she used to communicate with Russell. The Hyllands just recently responded to Virginia's motion. 16-CV-4168, Doc. 47.

4

## III. Analysis

The Hyllands argue that Illinois law governs all of Virginia's claims, that her claims for alienation of affections and invasion of privacy by intrusion upon seclusion fail under Illinois law, and that the Illinois statute of limitations bars both of Virginia's claims for invasion of privacy. This Court addresses Virginia's claims in turn.

### A. Alienation of Affections

The parties disagree over which state's law governs Virginia's claim for alienation of affections. The Hyllands argue that Illinois law controls while Virginia contends that South Dakota law should apply. When faced with a conflict of law issue in a diversity case, a district court should first determine whether the relevant laws actually conflict and then, if a conflict exists, apply the choice of law rules of the forum state. Prudential Ins. Co. of Am. v Kamrath, 475 F.3d 920, 924 (8th Cir. 2007). Illinois law conflicts with South Dakota law on the tort of alienation of affections because while South Dakota allows recovery of punitive damages as well as damages for mental suffering and loss of consortium, Illinois does not.[2] Jones v. Swanson, 341 F.3d 723, 736–37 (8th Cir. 2003) (discussing punitive damages in alienation of affections claim in South Dakota); Kaplan v. Jewett, 229 F. Supp. 3d 731, 734–36 (N.D. Ill. 2017) (noting that under Illinois law, a plaintiff in an alienation of affections case is limited to "actual damages" and cannot recover punitive damages or damages for mental suffering or loss of consortium); Morey v. Keller, 85 N.W.2d 57, 59 (S.D. 1957) (explaining that a plaintiff in an alienation of affections case may recover for loss of consortium and mental anguish); see also Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 14 (2d Cir. 1996) (finding a conflict where one state permitted recovery for loss of society in a wrongful death action while the other state

---

[2]Although Illinois repealed its alienation of affections statutes in 2016, this does not affect claims like Virginia's that accrued before 2016. 740 Ill. Comp. Stat. 5/7.1

did not). Given this conflict, this Court must apply South Dakota's choice-of-law rules to determine which state's law governs Virginia's alienation of affections claim. Prudential Ins. Co., 475 F.3d at 924.

South Dakota follows the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws to resolve choice of law questions. Burhenn v. Dennis Supply Co., 685 N.W.2d 778, 784 (S.D. 2004). Three sections of the Restatement are relevant to the most significant relationship test in this case.

First, § 6 of the Restatement sets forth the guiding principles for the Restatement's choice of law approach:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>     (a) the needs of the interstate and international systems,
>     (b) the relevant policies of the forum,
>     (c) the relevant polices of other interested states and the relative interests of those states in the determination of the particular issue,
>     (d) the protection of justified expectations,
>     (e) the basic polices underlying the particular field of law,
>     (f) certainty, predictability and uniformity of result, and
>     (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (Am. Law Inst. 1971).

Next, § 145 describes the general framework of the most significant relationship test for tort cases. It reads:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,

> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Id. § 145. Because § 145 "states a principle applicable to all torts and to all issues in tort," it is necessarily "cast in terms of great generality." Id. cmt. a.

Third, § 154 provides a more refined version of § 145 for cases involving alienation of affections. Id. § 145 cmt. a. (explaining that § 154 is meant to address a particular tort with "greater precision"). Section 154 states:

> The local law of the state where the conduct complained of principally occurred determines the liability of one who interferes with a marriage relationship, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Id. at § 154.

In this case, deciding where the conduct complained of principally occurred will be a fact-intensive inquiry. The conduct Virginia complains of here, of course, is Traci alienating Russell's affections. Virginia asserted in her brief and confirmed at the hearing that the basis of her claim is the telephone calls, text messages, and emails Traci and Russell exchanged while Traci was in South Dakota. Although Traci claims that the vast majority of her contact with Russell occurred in California, this does not necessarily mean that California is the place where Traci's alleged alienation of Russell's affections principally occurred. Rather, this Court must also consider the type of conduct Traci engaged in while in California and South Dakota. In Jones v. Swanson, No. 00-4112-KES (D.S.D. Sept. 12, 2001), for instance, this Court held that the alienation of a spouse's affections principally occurred in South Dakota because although the

7

defendant spent more days with the plaintiff's wife in other jurisdictions, the contact in South Dakota, which included sexual relations in the plaintiff's residence and a favorable meeting with a marriage counselor, was significant in alienating the wife's affections. Id. Doc. 78 at 6. Similarly, the Mississippi Court of Appeals rejected a plaintiff's argument that Mississippi law should apply simply because the sexual encounters between the defendant and the plaintiff's wife occurred there. Hancock v. Watson, 962 So. 2d 627, 630 (Miss. Ct. App. 2007). Determining where the injury or the conduct causing the injury occurred, the court explained, "would require an in-depth inquiry into the scope of the relationship between [the wife and the defendant]—including, for example, the manner and frequency and content of their communications outside of their face-to-face meetings." Id. at 630.

As the record stands now, there are too many questions of fact about Traci's conduct for this Court to determine where the conduct complained of principally occurred. True, Russell filed an affidavit in 16-CV-4060 stating that while he and Traci were in California they played tennis together, attended two tennis tournaments, went to brunch three times, met for an evening in Beverly Hills, met one morning in Palm Desert, and met once with Traci's therapist. 16-CV-4060, Doc. 10-1. But the record does not definitively establish what Traci and Russell discussed when they were together, whether their relationship in California was sexual, or whether Traci engaged in any other conduct in California that alienated Russell's affections. Indeed, Traci's husband in his lawsuit has taken the position that the alleged alienation of Traci's affections by Russell occurred not in California but after Traci returned to South Dakota. There is uncertainty about the content and frequency of the text messages and emails Traci sent Russell while she was in South Dakota and California. Although Traci has produced screenshots of some of the texts and emails, several of these messages are undated while others are too blurry to read. Discovery

8

may reveal additional messages from Traci and perhaps allow the parties to determine where Traci was when she was communicating with Russell.

There is also a question of fact concerning where Virginia's alleged injury occurred. Under § 154, the

> state where the injury occurs may be said with approximately equal persuasiveness to be either (1) the state of matrimonial domicil, which is the state that has the closest relationship to, and the greatest interest in, the spouses, or (2) the state where the defendant's conduct had its greatest impact upon the spouse with whom he dealt.

Restatement (Second) of Conflict of Laws § 154 cmt. c. At the hearing, the parties disagreed about whether the Flaums were in California or Illinois when Traci was text messaging, emailing, and calling Russell from South Dakota. Virginia claimed that she and Russell were in California the entire time while Traci claimed that Russell had been in Illinois. It would be premature to decide the place of injury without knowing more about Traci's conduct and where Russell was when he received Traci's communications from South Dakota.

Notwithstanding the questions of fact about the place of injury and the place where the conduct complained of principally occurred, Traci argues that Illinois law should apply because that is where the Flaums' marriage is domiciled. In Traci's view, the fact that her contact with Russell occurred in multiple states makes the Flaums' marital domicile the "central factor" in the choice of law analysis. Comment d of § 154 addresses the significance of the place where the conduct occurred when the defendant acted in more than one state:

> On occasion, defendant's conduct will occur in two or more states, such as when his travels take him across state lines during the course of his campaign to alienate the affections of plaintiff's wife. Here, the location of the defendant's conduct is not as important a contact as it would have been if all of the conduct had occurred in a single state. Nevertheless, the principal location of the defendant's conduct is the most important of all contacts in

9

> situations where this conduct can be assigned a principal location. The relative importance of this contact diminishes proportionately with any increase in that part of the conduct that occurred in other states. With any decrease in the importance of the principal place of the defendant's conduct, there is a corresponding increase in the importance of such other contacts, as the matrimonial domicil of the spouses and the domicil of the parties involved.
>
> Situations may arise where the defendant acts in one or more states and where these acts have their impact upon the spouse involved in still another state. A possible example would be a case where the defendant alienates the affections of the plaintiff's wife by means of letters written and mailed in state X to the wife in state Y. In such situations, the location, or principal location, of the defendant's conduct plays a less important role in the selection of the applicable law.

Id. cmt. d. Similarly, comment c of § 154 addresses the significance of the location of the injury when the state of matrimonial domicile is different than the state where the defendant's conduct had its greatest impact:

> In situations where the state of matrimonial domicil is not likewise the state where the defendant's conduct had its greatest impact, there is no one clearly demonstrable place of injury and this contact does not play as important a role for choice-of-law purposes as in the case of certain other torts.

Id. cmt. c.

Neither the Restatement nor the cases Traci cites establish that the Flaums' marital domicile is so important that Illinois law will apply regardless of what the evidence ultimately shows about Traci's conduct and the place where the injury occurred. This case is still in the early stages of discovery. Indeed, the only party to be deposed is the Flaums' son, and this Court fairly recently ordered Traci to produce her phone so that a forensic computer specialist could attempt to recover the messages she sent Russell. The current record is not sufficiently developed to permit a proper choice of law analysis. Traci's motion for judgment on the

pleadings or summary judgment on Virginia's alienation of affections claim is denied without prejudice to refiling a summary judgment motion at a later time.

### B.     Invasion of Privacy Claims

Richard argues that Illinois law governs Virginia's claims for invasion of privacy, that these claims are barred by Illinois' one-year statute of limitations for invasion of privacy claims, and that Count III, Virginia's claim for intrusion upon seclusion, fails as a matter of law. Virginia agrees that Illinois substantive law governs her invasion of privacy claims, but argues that the three-year statute of limitations in South Dakota should govern these claims. This Court addresses the statute of limitations issue before turning to whether Count III fails as a matter of law.

Because this is a diversity case, South Dakota's choice of law rules govern which state's statute of limitations applies. Pinnacle Pizza Co. v. Little Caesar Enters., 598 F.3d 970, 975 (8th Cir. 2010). Virginia argues that South Dakota's statute of limitations applies because statutes of limitations are considered "procedural" under South Dakota law. In the choice of law context, courts have traditionally drawn a distinction between laws that are "procedural" and laws that are "substantive." Restatement (Second) of Conflict of Laws § 122 cmt. b. A forum will apply its own procedural laws even if the law of another state governs the substantive issues in the case. Id. § 122. In 2008, this Court held that South Dakota "regards statutes of limitations as procedural," and that the South Dakota statute of limitations thus applied to a contract claim even though the claim itself was governed by Michigan law. Pinnacle Pizza Co. v. Little Caesar Enters., 560 F. Supp. 2d 786, 794–95 (D.S.D. 2008) (citing In re Estate of Lingscheit, 387 N.W.2d 738 (S.D. 1986), superseded by statute on other grounds as recognized in In re Estate of Geier, 809 N.W.2d 355, 357–58 (S.D. 2012)). The Eighth Circuit affirmed this Court's decision,

11

agreeing that South Dakota "regards statutes of limitations as procedural." Pinnacle Pizza Co. v. Little Caesar Enters., 598 F.3d 970, 975 (8th Cir. 2010) (citing Lyons v. Lederle Labs, 440 N.W.2d 769, 770 (S.D. 1989)). Just this year, this Court rejected an argument that it had to engage in a choice of law analysis to determine which state's statute of limitations applied to the plaintiffs' tort claims. Anderson v. Wells Fargo Bank, N.A., CIV. 17-5010-JLV, 2017 WL 3034260, at *14 (D.S.D. July 17, 2017). Relying on the Eighth Circuit's decision in Pinnacle Pizza, this Court held that South Dakota's statute of limitations applied to the claims. Id. But see, Delonga v. Diocese of Sioux Falls, 329 F. Supp. 2d 1092, 1099–100 (D.S.D. 2004) (relying on the most significant relationship test to conclude that South Dakota law, including the South Dakota statute of limitations, applied in a tort case).

Richard argues that because South Dakota follows the Restatement (Second) Conflict of Laws on other choice of law questions, it would also follow the revised version of § 142, the Restatement's approach to statutes of limitations. There is some support for Richard's argument. See Washburn v. Soper, 319 F.3d 338 (8th Cir. 2003). In Washburn, for example, the Eighth Circuit predicted that Iowa would apply the revised version of § 142 even though Iowa had historically classified statutes of limitations as procedural. Washburn, 319 F.3d at 341–42. The Eighth Circuit found that Iowa's strong commitment to the Restatement provided a "clear and persuasive indication" that Iowa would change its approach to conflicts involving statutes of limitations. Id. at 342. But the Eighth Circuit has not always agreed that a state would apply the Restatement to statutes of limitations simply because the state applies the Restatement in other contexts. For instance, the Nebraska Supreme Court generally follows the Restatement on choice of law issues, F.D.I.C. v. Nordbrock, 102 F.3d 335, 338 (8th Cir. 1996), but it has also held that statutes of limitations are procedural, Steen v. Murray, 770 F.3d 698, 705 (8th Cir.

2014). Despite Nebraska's reliance on the Restatement in other contexts, the Eighth Circuit in Steen rejected an argument that Nebraska would apply the Restatement to statutes of limitations. 770 F.3d at 705.

Richard has not cited any cases from the Supreme Court of South Dakota suggesting that this Court and the Eighth Circuit were wrong in the Pinnacle Pizza cases in holding that South Dakota considers statutes of limitations to be procedural. And while the South Dakota case law on this issue could be more recent and explicit, it supports the conclusion that statutes of limitations are procedural under South Dakota law. See Lyons, 440 N.W.2d at 770 (explaining, for purposes of deciding whether a statute should be applied retroactively, that "statutes of limitations are remedial, not substantive"); Estate of Lingscheit, 387 N.W.2d at 740–41 (holding that although Oklahoma law governed the substantive issues in a wife's petition for an elective share of her husband's estate, South Dakota law governed the time for filing such a petition); Davison v. Sasse, 31 N.W.2d 758, 758 (S.D. 1948) ("It is well established by the decision of this court that a statute which merely limits the time within which action may be brought upon a contract affects the remedy only, and not the right, and can have no extraterritorial effect, and will not prevent action upon the contract thereafter in the forum of some other state unless a statute of the forum so provides.") (citation omitted). Given this South Dakota case law and the Eighth Circuit's decision in Pinnacle Pizza, this Court will apply South Dakota's statute of limitations to Virginia's invasion of privacy claims.[3] Virginia's claims for invasion of privacy are timely under South Dakota's three-year statute of limitations. See Roth v. Farner-Bocken

---

[3]Even if this Court disagreed with the Eighth Circuit's decision in Pinnacle Pizza, it appears that this decision would still be binding. See AIG Centennial Ins. Co. v. Fraley-Landers, 450 F.3d 761, 767–68 (8th Cir. 2006) ("Although our circuit has never specifically determined the binding effect of a state law determination by a prior panel, other circuits defer to prior panel decisions absent a subsequent state court decision or statutory amendment that makes the prior federal opinion clearly wrong.") (citation and internal alterations omitted).

13

Co., 667 N.W.2d 651, 659 (S.D. 2003) (explaining that the statute of limitations on a claim of invasion of privacy is three years).

Richard also argues that Virginia's claim for intrusion upon seclusion fails as a matter of law. In Illinois, the tort of invasion of privacy by intrusion upon seclusion has four elements: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." Busse v. Motorola, Inc., 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004).

A claim for intrusion upon seclusion can only survive if the plaintiff had a reasonable expectation of privacy in the matter intruded upon. Acosta v. Scott Labor LLC, 377 F. Supp. 2d 647, 650–51 (N.D. Ill. 2005) (holding that a claim for intrusion upon seclusion under Illinois law failed because the plaintiff did not have a reasonable expectation of privacy in the area intruded upon); Jacobson v. CBS Broadcasting, Inc., 19 N.E.3d 1165, 1181 (Ill. App. Ct. 2014) (affirming grant of summary judgment on an intrusion upon seclusion claim because the plaintiff did not have a legitimate expectation of privacy or seclusion in the place intruded upon); see also Fletcher v. Price Chopper Foods of Trumann, Inc., 220 F.3d 871, 877 (8th Cir. 2000) ("A legitimate expectation of privacy is the touchstone of the tort of intrusion upon seclusion."). Whether a plaintiff has a reasonable expectation of privacy depends on the circumstances, including the plaintiff's conduct, the identity of the intruder, and the manner of the intrusion. See Acosta, 377 F. Supp. 2d at 650 ("Persons cannot reasonably maintain an expectation of privacy in that which they display openly.") (citation and internal alteration omitted); Danai v. Canal Square Assocs., 862 A.2d 395, 401–03 (D.C. 2004) (holding that a plaintiff did not have a reasonable expectation of privacy in a letter she threw in the trash); Sanders v. Am. Broad. Co.,

978 P.2d 67, 73 (Cal. 1999) ("Privacy for purposes of the intrusion tort must be evaluated with respect to the identity of the alleged intruder and the nature of the intrusion.").

Here, Virginia alleges that Richard intruded upon her privacy or seclusion by "obtaining highly sensitive information regarding Virginia's marriage and Traci's alleged sexual relationship with Russell." 16-CV-4168, Doc. 23 at 20; see also 16-CV-4168, Doc. 10 at ¶ 28 ("Richard wrongfully intruded and invaded Virginia's right to privacy by improperly and unlawfully obtaining possession of and/or misappropriating highly confidential information, emails, letters and text messages regarding Virginia and Russell and their marriage, without their consent."). The "highly sensitive information" forming the basis of Virginia's claim consists of the emails and text messages Russell sent Traci and that Richard then included, along with his own editorials, in the packages he sent the Flaums and others in Illinois. 16-CV-4168, Doc. 18 at ¶¶ 17–19; Doc. 24 at ¶¶ 17–19; Doc. 10 at ¶¶ 10–11; 16-CV-4060, Docs. 19-1, 19-2. Russell's emails and text messages to Traci include statements that he loved her and wanted to be with her, poems about being intimate with her, and discussions about his relationship with Virginia. Civ. 16-4060, Docs. 19-1, 19-2. Virginia has failed to plead any facts or offer any evidence suggesting that she had a reasonable expectation that Russell's emails and text messages[4] sent to

---

[4] In addition to emails Russell sent Traci, the packages Richard compiled included one email Virginia sent to Traci and Traci's daughter. 16-CV-4168, Doc. 18 at ¶¶ 17–19; Doc. 24 at ¶¶ 17–19; Doc. 10 at ¶¶ 10–11; 16-CV-4060, Doc. 19-1 at 40. Virginia did not have a reasonable expectation of privacy in this email. Her email was in response to an email from Traci's daughter explaining that "we" know everything about Russell's relationship with Traci and have "volumes of emails and messages that your husband has sent to our mother." 16-CV-4060, Doc. 38-11 at 9. Virginia replied that she understood the pain Traci's daughter was experiencing, but that Russell had never hidden anything from her and she knew "all about the emails and texts." 16-CV-4060, Doc. 38-11 at 10. Virginia could hardly have expected that this email to Traci and Traci's daughter would remain private from Richard. The email exchange between Virginia and Traci's daughter is also further evidence that Virginia did not have a reasonable expectation of privacy in the emails Russell sent Traci. It was late April 2015 when Traci's daughter emailed Virginia that they knew about Russell and Traci's affair and had

15

Traci would remain private from Richard, especially given that Russell was sending those messages to Richard's wife Traci.[5] Nor has Virginia cited any cases holding that a third party like herself has a claim for intrusion upon seclusion against a defendant like Richard for reading messages sent to his spouse concerning the spouse's affair. Virginia certainly has no reasonable expectation of privacy concerning Richard's angry editorials included in the packages.

Virginia has also failed to establish that Richard committed an unauthorized intrusion into her seclusion. Indeed, other than conclusory allegations in her complaint that Richard "wrongfully" obtained the emails and text messages Russell sent to Traci, Doc. 10 at ¶¶ 10, 28, Virginia has not offered any evidence or pleaded any facts explaining how Richard came to view the texts and emails. The mere fact that Richard may have discovered the emails while snooping through Traci's phone does not establish that he engaged in an unauthorized intrusion into Virginia's seclusion. See In re Trans Union Corp. Privacy Litig., 326 F. Supp. 2d 893, 901–02 (N.D. Ill. 2004) (holding that the defendant did not intrude into the plaintiffs' seclusion by accessing its own lawfully obtained files which contained private information about the plaintiffs); Miller v. Motorola, Inc., 560 N.E.2d 900, 904 (Ill. App. Ct. 1990) (concluding that the defendant did not commit an unauthorized intrusion into the seclusion of the plaintiff by disclosing medical information that the plaintiff had voluntarily provided to the defendant).

Even if Virginia had established that Richard intruded into her seclusion, no reasonable person would find this intrusion "highly offensive." "The question of what kinds of conduct will be regarded as a 'highly offensive' intrusion is largely a matter of social conventions and

---

"volumes" of messages that Russell sent Traci. Virginia's Complaint alleges that Richard intruded on her seclusion in July 2015 by obtaining the emails. A reasonable person would not expect that the emails and text messages would remain private from Richard when his daughter knew of them.

[5]Virginia's Rule 56(d) motion does not contend that she needs discovery to resist Richard's motion for summary judgment on the merits of her intrusion upon seclusion claim.

expectations." J. Thomas McCarthy, Rights of Publicity and Privacy § 5:95 (1993). Courts will consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." Bogie v. Rosenberg, 705 F.3d 603, 612 (7th Cir. 2013) (citation omitted). Richard did not hack into Russell's email accounts or snoop through his electronic devices to view the messages Russell sent Traci, let alone private messages between Russell and Virginia. Instead, Richard apparently viewed the messages on Traci's phone or iPad. Richard had a grave interest in these texts and emails not because they contained information about Virginia's marriage, but because they concerned his wife Traci's alleged affair with Russell and the possibility that she was leaving him. A reasonable person would not find that Richard committed a highly offensive intrusion into Virginia's seclusion by reading text messages and emails that Russell sent to Traci's electronic devices concerning Traci's alleged affair with Russell.

Virginia also asserts that Richard intruded upon her seclusion when he sent packages containing the emails and text messages and his own editorials to the Flaums' children and others in Illinois. However, the basis for the tort of intrusion upon seclusion is "some type of highly offensive prying into the physical boundaries or affairs of another person" rather than the publication of private facts. Lovgren v. Citizens First Nat'l Bank of Princeton, 534 N.E.2d 987, 989 (Ill. 1989). Thus, a plaintiff cannot state a claim for intrusion upon seclusion if his injury stems from publication rather than the intrusion. Thomas v. Pearl, 998 F.2d 447, 452 (7th Cir. 1993); Lovgren, 534 N.W.2d at 989. Any injury caused by the packages flowed from Richard's publication of the emails and text messages rather his prying into Virginia's affairs. Virginia's

17

theory that Richard intruded upon her seclusion by sending the packages thus fails as a matter of law.

## C. Virginia's Rule 56(d) Motion

Virginia's Rule 56(d) motion asks this Court to deny or defer ruling on much of the Hyllands' motion for summary judgment so that she can conduct discovery. Under Rule 56(d), a district court may deny a summary judgment motion or allow time for discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery." Toben v. Bridgestone Retail Operations, LLC, 751 F.3d 888, 894 (8th Cir. 2014) (citation and internal quotation marks omitted). The purpose of Rule 56(d) is "to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." Id. (citation omitted).

A party alleging that additional discovery is necessary under Rule 56(d) must show "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." Toben, 751 F.3d at 895 (citation and internal quotation marks omitted). Virginia filed an affidavit in support of her Rule 56(d) motion explaining that without discovery from Traci and Richard, she did not have access to the emails and text messages Traci sent Russell. 16-CV-4168, Doc. 26 at ¶ 6. Virginia contends that she needs these communications to show that Traci alienated Russell's affections while she was in South Dakota. Traci argues that her communications with Russell are not "essential" because Illinois law will apply regardless of the content of these communications. As explained above, however, the current record does not establish that Illinois law applies to Virginia's alienation of affections

claim. Discovery concerning Traci's communications to Russell is essential to resisting the motion for summary judgment because such discovery may allow Virginia to demonstrate that South Dakota law applies to her alienation of affections claim. This Court thus grants Virginia's Rule 56(d) motion with respect to the Hyllands' motion for summary judgment on Virginia's alienation of affections claim.

**IV. Conclusion**

For the reasons stated above, it is hereby

ORDERED that Defendants' Motion for Judgment on the Pleadings, or Alternatively, Motion for Summary Judgment, 16-CV-4168, Doc. 16, is granted as to Count III, Virginia's claim for invasion of privacy by intrusion upon seclusion. It is further

ORDERED that Plaintiff's Motion to Deny or, in the Alternative, Continue Defendants' Motion, 16-CV-4168, Doc. 25, is granted with respect to Virginia's claim for alienation of affections. Plaintiff's motion is otherwise denied.

DATED this 16th day of January, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE